UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE ESPINOZA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 11-89J |
| | ) | |
| v. | ) | Judge Kim R. Gibson/ |
| | ) | Magistrate Judge Cynthia Reed Eddy |
| WARDEN LINDSAY; UNIT | ) | |
| MANAGER GATES; CASE | ) | |
| MANAGER PASSMORE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# REPORT AND RECOMMENDATION

**I. RECOMMMENDATION**

The Court considers here Defendants' Motion to Dismiss this action brought by George Espinoza ("Plaintiff" or "Espinoza") pursuant to 42 U.S.C. § 1983. Plaintiff, acting pro se, contends that his rights under the Fourteenth Amendment were infringed when officials at the private prison facility in which he is incarcerated refused his request to participate in specific drug and alcohol programs based on his status as a deportable alien. [ECF No. 3]. The Court respectfully recommends that the Motion to Dismiss [ECF No. 12] be granted with prejudice.

**II. REPORT**

  **A. Background**

Espinoza is a federal inmate at Moshannon Valley Correctional Center ("MVCC") in Philipsburg, Pennsylvania. The Center is owned and operated by Geo Group Corporation ("Geo") pursuant to a contract with the Federal Bureau of Prisons ("BOP"). While he was incarcerated at MVCC, Espinoza completed forty hours of drug treatment, and then sought to enroll in more

comprehensive rehabilitation programs, the Residential Drug Abuse Program ("RDAP") and/or the Non-residential Drug Abuse Program ("NRDAP"). [1] According to the Complaint, neither of these programs is available at MVCC, although they are offered at other BOP institutions. [ECF No. 3 at ¶2]. Espinoza alleges that he met with a person identified as the Drug Abuse Treatment Specialist ("DATS") at MVCC, and asked to participate in the BOP's NRDAP program. [Id. at ¶ 10]. This request was denied because Plaintiff had had "an INS detainer." [Id. at ¶11]. The DATS told Espinoza that he should request a transfer to a facility that could enroll him in an RDAP, and, to accomplish this, should speak with his unit team. [Id. at ¶¶ 12-13].

Espinoza met next with his Unit Manager, Gates, asking to be provided with a RDAP at MVCC or to be transferred to an institution where he could enroll in an RDAP. According to Espinoza, Gates denied his request on the ground that NRDAP is targeted to the inmate population waiting [for] RDAP. Because Espinoza had a public safety factor - being classified as a deportable alien – he did not qualify for RDAP." [Id. at ¶16]. Plaintiff made the same request to Warden Lindsay who again "den[ied] [Espinoza's] request because he is an ALIEN." [Id. at ¶19]. Last, Plaintiff approached his case manager, Passmore, who also rejected Plaintiff's request, stating, "You received a response from the drug education program regarding this issue, please refer to their response." [Id. at ¶21].

---

[1] The RDAP or "Residential Drug Abuse Program "targets the inmate who volunteers for treatment is unable to participate in the entire RDAP." BOP Program Statement § 2.5.1. See www.bop.gov/policy/progstat/5330_011.pdf. "When beginning the program, the inmate must be able to complete all . . . components described in . . . this section." Id. at 2.5(b) (3). "A deportable inmate is unqualified for the RDAP because he or she cannot participate in the transitional drug abuse treatment component because he or she is not eligible for [Residential Reentry Center] placement. Id. at Example 1. The NR DAP ("Non-Residential Drug Abuse Program") is available for these unqualified inmates." Id. Plaintiff attempts to rely on this Program Statement to establish his entitlement to participate in the RDAP program. This reliance is misplaced not only because Espinoza is a deportable alien, BOP facility.

2

Plaintiff contends that each of these Defendants transgressed his rights under the Fourteenth Amendment, 28 C.F.R. §551.90, and 18 U.S.C. § 3621(e) [2] by refusing to admit him to RDAP because of his status as an alien. He requests both monetary and injunctive relief.

**B. Standards Governing Dismissal of IFP Suits**

The Prisoner Litigation Reform Act ("PLRA") obligates this Court to dismiss IFP claims that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who enjoys immunity from such relief. See 28 U.S.C. §1915(e)(2)(B)(i-iii).

The Defendants seek to dismiss Plaintiff's Complaint for failure to state a claim. In evaluating this request, the Court is obliged to accept Plaintiff's allegations as true, drawing all reasonable inferences following therefrom in Espinoza's favor. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). This does not excuse Plaintiff from including in his Complaint facts that demonstrate a plausible claim to relief ; the standard is the same as that applied to a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). See Powell v. Hoover, 956 F. Supp. 564, 568 (M.D. Pa. 1997) (applying Rule 12(b)(6) standard to claim dismissed under 28 U.S.C. § 1915(e)(2)(B)).

In Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008), the United States Court of Appeals for the Third Circuit reiterated the Rule 12(b)(6) pleading requirements articulated by the Supreme Court in Bell Atl. v. Twombly, 550 U.S. 544, 570 (2009) and Ashcroft v. Iqbal, 556 U.S.

---

[2] This regulation provides that BOP "staff shall not discriminate against inmates on the basis of race, religion, national origin, sex, disability, or political belief. This includes the making of administrative decisions and providing access to work, housing and programs." Plaintiff also alleges that Defendants' negligence, wrongful acts, or omissions deprived him of "adequate substance abuse treatment programs, all in violation of . . . 18 U.S.C. § 3621(e)." [ECF No. 3 ¶32]. This statute requires that the BOP provide "every prisoner with a substance abuse problem . . . the opportunity to participate in appropriate substance abuse treatment [and] shall, subject to the availability of appropriations, provide residential substance abuse treatment (and make arrangements for appropriate aftercare . . . .)" Neither the regulation nor the statute applies here because the Defendants are not BOP staff, and MVCC is not a BOP institution.

3

662 (2009). See Phillips, 515 F.3d at 233–34. Motions to Dismiss are evaluated pursuant to a three-pronged approach. First, the Court must identify the elements essential to the plaintiff's cause of action. Second, the Court evaluates whether the complaint sets forth factual allegations as opposed to conclusory statements; the former it accepts as true, and the latter it disregards. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). Third, if the complaint sets forth factual allegations, the Court must determine whether they support a claim to relief that is plausible on its face. See Twombly, 550 U.S. at 570.

The plausibility requirement is met when the plaintiff pleads facts that allow the court reasonably to infer that the defendant is liable for the misconduct alleged. Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir.2009). This standard does not impose a probability requirement at the pleading stage, but instead requires that the facts alleged be sufficient to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of the claims made. See Iqbal, 129 S.Ct. at 1949; Phillips, 515 F.3d at 234.

**C. Discussion**

**1. The Applicability of 42 U.S.C. §1983**

In order to state a viable cause of action under section 1983,[3] a plaintiff must allege sufficient facts to support the plausibility of two elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." Schneyder v. Smith, 653 F.3d 313, 319 (3d Cir. 2011) (citing Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993)).

---

[3] 42 U.S.C. § 1983 provides a cause of action against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected" any person to the deprivation of any right protected by federal law or the United States Constitution.

4

Plaintiff's Complaint fails to support his assertion that Defendants acted under color of state law. "It is well established that liability under § 1983 will not attach for actions not taken under color of state law." Brown v. Philip Morris Inc., 250 F.3d 789, 800 (3d Cir. 2001) (citing Bethea v. Reid, 445 F.2d 1163, 1164 (3d Cir. 1971)). See also Varma v. Fed. Bureau of Prisons, No. 10-2838, 2011 WL 1108659 at *2 (3d Cir. 2011) (same) (citing Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995)); Bennett v. Bennett, Civ. No. 07-91J, 2008 WL 1969282 at * 1 (W.D. Pa. 2008) (action by federal prisoner must proceed pursuant to Bivens). The unavailability of section 1983 in circumstances analogous to those here was explained by the Court in Baez v. Cornell Co., Inc., Civ. No. 3:10-24, 2010 WL 5648572 at *2 (W.D. Pa. Dec. 23, 2010):

> All of Defendants' conduct alleged in Plaintiff's Complaint occurred while Plaintiff was a federal inmate in the custody of the United States, Federal Bureau of Prisons. While some of the alleged conduct might involve *federal* officials, [none] of the Defendants' alleged conduct could have been under color of *state* law. Thus, Plaintiff cannot state a claim under 42 U.S.C § 1983.

Id. (emphasis in original) (internal citation omitted).

Because the first element of a viable section 1983 claim cannot be satisfied under the facts presented, or supplemented to pass muster under the statute, this claim should be dismissed with prejudice.

**2. Viability of a Bivens Action**

The Defendants do not address Espinoza's section 1983 allegations, but instead construe his Complaint as one brought pursuant to the Supreme Court's decision in Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).[4] In Bivens, "[the Supreme Court]

---

[4] The lone reference to Bivens in Espinoza's Complaint appears in the Prayer for Relief, where he requests compensatory damages, "the precise amount to be supplied to the Court upon a trial on the merits, pursuant to Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)." [ECF No. 3 at 6, ¶ C]. It is not clear, therefore, that Espinoza intended to

5

recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." Corr. Serv. v. Malesko, 534 U.S. 61, 66 (2001). Specifically, the Court "held that a victim of a Fourth Amendment violation by federal officers may bring suit against the officers in federal court." Id. A Bivens action "permits damage suits against federal employees mirroring those filed against state actors pursuant to 42 U.S.C. §1983." Bennett, 2008 WL 1969282 at *2.

The Supreme Court recently described Bivens's "core holding" as "recognizing in limited circumstances a claim for money damages against federal officers who abuse their constitutional authority." Malesko, 534 U.S. at 67. "In order to state a Bivens claim, a plaintiff must show that the defendants: (1) acted under color of federal law; and (2) caused the plaintiff to be deprived of a right secured by the constitution and laws of the United States." Brady v. Robinson, 77 F.3d 488 (9th Cir. 1996) (citing Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir. 1991)). Until recently, United States Courts of Appeals confronting the question were divided over whether employees of private prisons operating under contract with the BOP are subject to liability under Bivens.[5] Earlier this month, the

---

assert liability based on violation of Bivens. Because Espinoza is acting pro se, however, the Court will interpret his Complaint liberally, assume that Plaintiff intended to assert a Bivens claim, and analyze the merits of that claim.

[5] Compare Pollard v. The Geo Group, Inc., 607 F.3d 583, 588 (9th Cir. 2010) (holding claim cognizable), amended, 629 F.3d 843 (9th Cir. 2010), cert. granted sub nom Minneci v. Pollard, 131 S.Ct. 2449 (2011)) with Alba v. Montford, 517 F.3d 1249, 1252–55 (11th Cir.2008) (holding claim is not cognizable); Holly v. Scott, 434 F.3d 287, 295–97 (4th Cir. 2006) (same). See also Peoples v. CCA Detention Ctrs., 449 F.3d 1097, 1099 (10th Cir. 2006) (en banc) (evenly divided on issue).

Supreme Court resolved that split in Minneci v. Pollard, --U.S.--, No. 10-1104, 2012 WL 43511 (Jan. 10. 2012), holding - at least in the context of the Eighth Amendment - they are not. "Where the [challenged conduct] allegedly amounts to a violation of the Eighth Amendment, and where that conduct is of a kind that typically falls within the scope of traditional state tort law . . . the prisoner must seek a remedy under state tort law. We cannot apply a Bivens remedy in such a case." Id. at *10.

The Court need not predict whether the holding in Minneci would apply to bar a Bivens action against the Defendants in this matter, because the facts alleged fail to raise a plausible claim Fourteenth Amendment claim.

### a. Property Interest

Plaintiff has not alleged and nothing in his Complaint can reasonably be read to constitute a claim that Defendants' actions deprived him of a property interest.

### b. Liberty Interest

Espinoza has also failed to allege facts sufficient to establish a plausible claim that he was deprived of a liberty interest. "[A] prisoner holds a liberty interest triggering due process protection in two instances: when '[government] statutes and regulations create a liberty interest in freedom from restraint that imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,' and when 'severe changes in conditions of confinement amount to a grievous loss that should not be imposed without the opportunity for notice and an adequate hearing.'" Evans v. Sec. Pa. Dept. of Corr., 645 F.3d 650, 663 (3d Cir. 2011). [6]

---

[6] "Examples of prison hardships that would qualify as so atypical and significant as to implicate due process considerations include unwanted administration of anti-psychotic drugs, involuntary commitment to a mental hospital or extension of the prisoner's sentence for his under underlying criminal conviction." English v. Albers, Civ. Act. No. 11-1602, 2011 WL 4853176 at * 5 (E.D. La.

Plaintiff's alleged liberty interest falls into the second category; Espinoza contends that Defendant's failure to transfer him to an institution offering RDAP or to make an RDAP available to him at MVCC amounts to an unconstitutional condition of confinement. The case law is to the contrary. "[P]risoners have no constitutional right to be assigned to a particular institution, facility or rehabilitative program." Jones v. Beard, Civil Act. No. 10-5544, 2011 WL 3611470 at *4 (E.D. Pa. Aug. 16, 2011) (quoting Podhorn v. Grondolsky, No. 09-3559, 2009 WL 3471299 at *2 (3d Cir. October 29, 2009)) (citing Olim v. Wakinekona, 461 U.S. 238, 245 (1983)). "Being classified . . . a . . . 'deportable alien' and its resulting consequences of disqualification for certain programs, as with any other security classification, is not outside what a prisoner 'may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law.'" Becerra v. Miner, No. 07-1080, 2007 WL 2717305 at *1 (3d Cir. Sept. 19, 2007). (quoting Fraise v. Terhune, 283 F.3d 506, 522 (3d Cir. 2002) (citations omitted)).

### a. Equal Protection

Espinoza does not use the phrase "equal protection" in his Complaint. Instead, he states that Defendants "blatantly discriminated against [him]" by denying his request to participate in an RDAP at MVCC or failing to transfer him to an institution that had such a program. [ECF No. 3 at ¶¶ 19, 31]. Courts considering similar claims have rejected them. In Boulware v. Fed. Bur. of Prisons, 518 F. Supp. 2d 186 (D.D.C. 2007), the Plaintiff contended that his equal protection rights were violated when prisoners in the facility in which he was incarcerated were denied vocational opportunities available to inmates in other BOP facilities. The Court wrote: "In order to make an equal protection claim, a plaintiff must either allege that the government intentionally discriminated against him as a

---

September 19, 2011) (quoting Sandin v. Connor, 515 U.S. 472, 484 (1995)).

member of a protected class, or treated him differently than another similarly situated individual or group." Id. at 189 (internal citations omitted). The Court then stated:

> "In determining whether [a prisoner] is being denied equal protection of the laws[,] the class to which he belongs consists of the persons confined as he was confined, subject to the same conditions to which he was subject." [The Plaintiff's] alleged comparison [of] D.C. prisoners [to] prisoners in BOP facilities nationwide is insufficient to state an equal protection claim.

Id. at 190 (internal citation omitted). For a similar statement of the law, see Brooks v. Andrews, No.1:03-cv-06106, 2007 WL 111679 at *6 (E.D. Cal. January 10, 2007) (inmate housed at a private prison was not similarly situated to inmates housed in federal prisons for the purpose of determining if the private prison's dental policy was discriminatory). Plaintiff does not allege that any other inmate at MVCC was given access to the substance abuse program he requested.

Even if the Court assumes, arguendo, that Plaintiff has satisfied the "similarly situated requirement," he is still required to show that the alleged difference in treatment was the result of intentional or purposeful discrimination. Snowden v. Hughes, 321 U.S. 1, 8, (1944); Wilson v. Schillinger, 761 F.2d 921, 929 (3d Cir.1985); E & T Realty v. Strickland, 830 F.2d 1107, 1113-14 (11th Cir.1987). The bare-bones allegations in Plaintiff's Complaint are insufficient to sustain this aspect of an equal protection claim, and fail to "nudge [Plaintiff's] claims of invidious discrimination across the line from conceivable to plausible." See Iqbal, 127 S.Ct. at 1951 (internal quotation marks omitted).

## III. CONCLUSION

For the reasons set out above, it is recommended that the Motion to Dismiss filed by the Defendants [ECF No. 12] be granted. Because the Court finds that amendment of the Complaint would be futile, it is further recommended that the dismissal be with prejudice.

9

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this Report and Recommendation must be filed by February 15, 2012. Failure to file timely objections will waive the right to appeal. <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

        Respectfully submitted,

        <u>s/ Cynthia Reed Eddy</u>
        Cynthia Reed Eddy
        United States Magistrate Judge

Dated: January 31, 2012

cc:     Counsel of Record via CM-ECF

       George Espinoza
       71110-53
       Moshannon Valley Correctional Center
       555 I Geo Drive
       Philipsburg, PA 16866